Okay, if you're all ready, then this is a case of Wendell Sightseeing Co., Inc. v. City of Chicago, 121-1377. Before you, you have Justice Cynthia Cobb, Justice James Fitzgerald Smith, and not present, but we'll listen to the tape of this case on Friday, David Ellis. Our procedure is to let the appellant go for 10 to 15 minutes, and then we will ask questions. We will try not to interrupt you until that point. Then the appellee goes forward, and the same happens, and then at the end of that, there's the conclusion. So with that in mind, the appellant may proceed. Thank you, Your Honor, and I'm Stephen Collins for the City of Chicago. I think your voice is off. Oh, is it better now? Yeah. Okay, thank you. May it please the Court. Federal law preempts local taxes on vessels that operate on the navigable waters of the United States. That prohibition does not reach the city's tax on revenue that tour boat operators generate from providing amusements on their boats. The federal statute's plain language, as well as relevant tonnage clause precedent, establish that the city's tax is not preempted. Moreover, if the Court considers legislative history, that supports the city's position as well. But I'd like to start with the plain language of the federal statute at issue here, which I'll call Section 5B for short. By its terms, Section 5B prohibits taxes on vessels themselves, and a tax on a vessel is what the Alaska Supreme Court said in North Pacific Fishing, namely one solely for the vessel's use of ports and navigable waters. The city tax at issue here, which I'll call Section 32, does not tax Wendella solely for using ports or navigable waters. Rather, liability for the tax arises because Wendella provides amusements that take place on its boats. Section 32 is therefore similar to the tax that the Hawaii Court upheld in Real Hooker, which was a tax on revenue that a vessel owner generated from providing charter fishing services. There, as here, the tax was based on the service provided aboard a vessel and not on the vessel itself. Now, the circuit court in this case thought that Real Hooker was distinguishable because the tax in that case applied to all vessels, and Section 32 applies only to tour boat operators. But that reasoning was flawed for two reasons. First, the court ignored that Section 32 complements the city's general amusement tax, which applies to amusements in the city that did not take place on tour boats. Section 32 thus ensures that all amusements in the city are treated equally, regardless of whether they take place on water or dry land. Second, North Pacific Fishing establishes that a tax need not apply to all businesses in order to avoid preemption. The tax in that case applied only to a subset of fishery businesses. Despite that, the tax was not preempted. Rather, it was valid because it was assessed on an activity separate from the vessel itself, namely catching and processing fish. Likewise here, Section 32 is a tax on amusements that Wendella provides, which are separate from the vessels themselves. What benefit? You say amusement. What benefit? What are they getting? What is the patron getting? The patron is the payer of the, pays to attend the amusement. If you're speaking to another party or asking about another party about their benefit, I'm happy to address that specifically. No, go ahead. Okay. In sum, given that the presumption against preemption is especially strong in cases such as this involving taxation, Wendella has not satisfied its burden of proving that Section 5B, by its plain language, preempts the city's tax. Indeed, Wendella has not identified a single case where a local tax on a vessel owner's business revenue was preempted by Section 5B. Its preemption claim therefore fails. Well, has the city presented a case? You say that Wendella hasn't presented a case. What case has the city presented? I see three cases upon which the city relies. One, which you mentioned earlier, which relies on the legislative history as opposed to the plain language. What cases has the city presented? Well, Your Honor, I believe our best case is Real Hooker, which Your Honor might be referring to, which in part did rely on legislative history in finding favor of taxation and against preemption. It's our position that the tax in this case is very similar to the tax in Real Hooker, in that in both cases, the tax is based on a service provided aboard a vessel and not on the vessel itself. Well, what benefit, you say the benefit provided, what is it? What product are you selling? I mean, what product is the city actually taxing? Your Honor, the city is, with respect to Section 32, the tax is on the tour boat operator for the charges the operator receives for providing amusement aboard its vessels. What amusement? That's simply precluded by the plain language of Section 5B. Yeah. Because, yes, Your Honor, by its plain language, Section 5B prohibits taxes on vessels themselves. Vessels or watercraft. Indeed. Or from its passengers or crews. Yes. Is a boat operator crew or not? It's our position that Wendella as a corporate entity is not a crew. This is boat operator tax, though. This is a boat operator's tax. That's not the corporate entity of Wendella. It's the boat operator's tax. Yeah. And as applied to Wendella, Wendella as the, it both owns and operates its vessels. So in this case, Wendella is both the owner and the operator for purposes of Section 32. But Section 5B, by its plain language, prohibits taxation on three specific entities. Vessels, passengers, and crew. And it's our position that in this case, Section 32 does not prohibit taxation on those three entities. But in addition to Section 5B's plain language, it's also important to consider the tonnage clause of the U.S. Constitution. Both parties in this case, as well as the Circuit Court, agree that cases interpreting that clause inform a court's analysis of Section 5B. The tonnage clause prohibits charges for the privilege of using a port. Section 32 does not charge a tour boat operator for using a port, so it complies with the tonnage clause. The Circuit Court, however, believe that cases interpreting the tonnage clause stand for the proposition that a tax on a vessel owner is necessarily an unlawful duty of tonnage. But the cases the court relied on make clear that if a tax is for the privilege of using a port, then the taxing authority cannot evade the tonnage clause by attempting to tax a representative of the vessel, such as the owner. The cases do not stand for the proposition that any tax on a vessel owner amounts to a duty of tonnage. The City's tax is not a duty of tonnage, and it is not preempted by Section 5B. Last, I'd like to briefly address Section 5B's legislative history. This court doesn't need to address legislative history because the text of Section 5B is clear, but should the court take legislative history into account, it supports the City's position. When Section 5B was first enacted, Representative Young explained that it sought to prevent local taxation of vessels that merely make innocent passage through the taxing jurisdiction, and that's plainly not what Section 32 does. And later, when Congress amended Section 5B in 2003, the joint explanatory statement of the Committee of Conference explained that the statute's purpose was to clarify existing law regarding constitutionally permitted taxes. Section 32 does not violate any provision of the U.S. Constitution, so it is not preempted by Section 5B. I just have one question, and it goes back to Wendella 1. In Wendella 1, did we rely on the legislative history or the plain language of 5B? The court relied on the plain language. So I've been in what I'm calling Wendella 2. Would we depart from just reliance on the plain language and now resort to reliance on the legislative history? Wouldn't that in some conflict with this court's holding? Not necessarily, Your Honor, because the issue that was addressed in Wendella 1 was whether the City's general amusement tax, as applied to Wendella's patrons, constituted an unlawful tax on passengers, as that word is used in Section 5B. This case does not raise the question of whether the City's Section 32 is a tax on passengers. Rather, the issue in this case concerns a different provision of the statute, namely whether Section 32 constitutes a tax on the vessel. And so we mentioned legislative history in the event that the court sees any ambiguity around what it means to tax a vessel, as opposed to... Do you see any ambiguity in the term vessel? No, Your Honor, and it's our position that the court doesn't need to consider legislative history, but yeah. And with that, I'm happy to take any additional questions that the court might have. I'm not certain what case you would point us to that would support departing from the plain language of 5B. Is there a case other than, not Lowman, but the Alaskan case? Is there a case other than that that you would point us to? For consulting legislative history? Departing from the plain language, when the language is plain and clear. Yeah, to be clear, in this case, it's our position that there is no need for the court to consult legislative history. The City prevails on the plain language of Section 5B. It is simply your position that the word crew, as it's used in 5B, doesn't refer to the boat operator. Right. The actual boat operator, but instead the corporate entity. Right. It's our position that as Section 5B uses the term crew, that refers to people, the physical people aboard the vessel who operate the vessel, and not on the corporate entity, such as Wendella, that owns the vessel. And Wendella, in this case, has never taken the position that Section 32 amounts to an impermissible tax on crew. Rather, its only position in this And as we've explained by Section 5B's plain language, Section 32 is not a tax on Wendella's vessels. But in the ordinance, Section 32 says the tax is imposed upon all persons, all persons engaged in the business of operating the tour. Wouldn't that incorporate or wouldn't that include the corporate entity, the people on the ground, the people on the boat? That's all persons. Well, Wendella is challenging the tax as applied to it. And in this case, the tax is being applied only to Wendella as a corporate entity. Well, why doesn't the legislation then say something other than all persons? Is the ordinance unlawfully drafted? Are we to construe the ordinance differently from what its plain language says? No, there's no need to depart from the plain language of the ordinance. I believe that the ordinance uses the term persons just to encompass all kinds of business owners, regardless of the precise business structure that applies in a case at hand. Here, the tax is applying to Wendella as a corporate entity. And Wendella, again, has never made the argument that it amounts to a tax on its crew as opposed to on its vessels. But then the second line in the ordinance says the tax shall be 9% paid to the tour boat operator. Are we to just parse out portions of Section 32 to determine which sections 5B applies to and which sections it does not? We know that's pretty much what we're being asked to do. I don't think there's any need to do that in this case, because the question that the case presents is whether Section 32 amounts to a tax on a vessel. And it's not uncommon in complementary tax regimes such as this for there to be some kind of legal impediment to taxing one party of a transaction. So, for example, in the sales and use tax context, the Commerce Clause might prevent a state from taxing out-of-state retailers. So for those transactions, the purchaser is taxed instead pursuant to the state's use tax. And Section 32 is similar, in that we acknowledge that pursuant to Wendella 1, the city cannot tax Wendella's patrons because they are passengers for purposes of Section 5B. So in compliance with that decision, the city is taxing the operator instead, which under Section 5B is not prohibited from taxation. Isn't this simply a pass-through on the patron to the tour boat operator? I mean, the second line in Section 32 would seem to suggest that it's just a pass-through. Well, Wendella may, if it chooses, pass the cost of the tax on to its passengers. But Rio Hooker makes clear that in the event a business chooses that option, that business choice does not convert the underlying tax in question from or into a tax on a passenger such that it's prohibited by Section 5B. So in this case, the tax is not on a passenger merely if Wendella decides to collect the cost of the tax from its patrons. I have nothing else. All right, Apelle, you may proceed. Thank you, Mr. Cowns. Thank you, Justice Smith. May it please the Court. I'd like to address some of the comments that Council made to get to the heart of this matter. And noteworthy, Justice Cobbs, you had asked regarding the ability of Wendella to pass through this tax to its passengers. And Council agreed that it could or said that it could be passed through. I submit to the Court, however, that in Wendella 1, this Court had found that it is illegal to tax the amusement tax or Section 30, excuse me, prior Section 20, the general amusement tax on Wendella's passengers. Thus, there's a dilemma here. The City has put Wendella in the position of having to pay the amusement tax that under the general Section 20 would be the obligation of the passenger. But they've now moved it and made the obligation to the tour boat operator. But the tour boat operator, by law, cannot charge the passengers for the Court's ruling in Wendella 1. Also, Council, when asked, said that their best case is Real Hooker. The Real Hooker case is, I think, a relatively simple case in as much as while the operator was using a federal waterway, the tax involved in that case was a general excise tax that was charged to all business owners in that state. And as a result, that tax was not on the use of a federal waterway. So Real Hooker is entirely distinguishable than the case at hand here. And then finally, of course, not trying to be trite, Council said that Wendella had not cited a case where Section 5B preemption was applied in the state of Illinois. And of course, we do know that not very long ago, we faced this very issue in Wendella 1, in which this very Court said that Section 5B does, in fact, preempt Section 20, the general amusement taxes to Wendella's ability to tax its passengers. For the rest of my argument, I'd like to highlight some and just touch on some of the points that are raised by the City within its briefing. As I mentioned, what the City did here and did it during Wendella 1, during the pendency of the case, was to simply change the obligor of the tax from the passenger to the doorboat operator. The law does not allow the City to do that. I note that in our briefing, we cited the case of Smith v. Turner. It's an 1849 U.S. Supreme Court case. And in that case, the United States Supreme Court said that a tax on the vessel is a tax on its representative or its owner. And I think that, you know, when we talk in plain terms, I think what we could conclude is a vessel can't pay a tax. It's an inanimate object. Somebody has to pay the tax. So, in this case, they are, in fact, taxing the tour boat operator. And conversely, when you tax the tour boat operator, you're taxing the vessel. And the plain words of MTSA, Section 5B, says that you may not tax a vessel. And that is preempted by the federal government. Excuse me. I also note that throughout the City's briefing, they cite a number of cases. And I think that the Circuit Court here did a very, very good job. These are other cases that were ruled on in other jurisdictions outside of Illinois. And I think that the Circuit Court did a wonderful job in terms of outlining why they don't apply in this instance. The Circuit Court divided those cases into two categories. One, where the subject tax was unrelated to the use of the federal waterways, but the local jurisdiction actually provided a service or a benefit. And Justice Smith, I noticed that you would ask that very question. The City of Chicago provides no benefit and no service. In fact, the provision of a benefit or a service is something that is an exclusion to Section 5B. And the City does not dispute that that exclusion doesn't apply here. So, what that means is, in the event that a tax is levied by, for example, in the Maher Terminals case, where the Port Authority of New York and New Jersey levied a tax or a fee, I should say, under its lease with the Port Authority, they lost their 5B challenge because Maher, the plaintiff, was a landside service and provided services to charter boats, but did not use the federal waterway. The other kind of cases where the Circuit Court found that Section 5B preemption was denied is where the tax is a general tax that applies to all businesses, such as income taxes and sales tax. And in those cases, 5B preemption was denied because those cases are not for the use of a federal waterway, but rather a tax on all businesses within the city. Realistically, all businesses, like Wendella, have to pay a sales tax and have to pay income taxes. And to simply say that those taxes are preempted on such a basis is exactly the opposite of what the case is that the City says. The other thing that I'd like to highlight is that the City talks about Section 32 as being a complementary tax, essentially leveling the playing field amongst amusement providers within the City of Chicago. And in fact, it is not a complementary tax. The fact of the matter is that federal government has reserved the right to tax the use of a federal waterway. And Wendella, as this Court found in Wendella 1, cannot charge the amusement tax to its passengers. And what the City is saying is, well, it's not fair because land-based amusements, they can be taxed with the amusement tax. But that's not what the really involve sales and use taxes, where you're leveling the playing field so that purchasers of products do not go outside local jurisdictions in order to take advantage of better tax rates. And the courts have allowed local taxing authorities to even that playing field within that realm. And so that's not the case that's happening here. What's happening here is simply the City would like the ability to tax Wendella and other tour boat operators simply because it can't do so, so they change the obligor of the tax. And so I submit to the Court that, and last, that the tonnage clause cases that the City cites, they are, as we know from various cases, that the tonnage clause mirrors MTSA and Section 5B, but it isn't controlling. MTSA and the tonnage clause are two very separate, well, one is the statute, of course, one is in the United States Constitution. And while the City would like to stretch the meaning of Section 5B in order to have an interpretation based on tonnage case law, it's not instructive here. I mean, frankly, the Court addressed all of these issues in Wendella 1, but for the only question of really whether the City can change the obligor of the tax. I submit to you today that they cannot do so, and that the tonnage clause cases that the City cites are really of no assistance in this regard. I simply conclude by saying that the Circuit Court was correct in granting Wendella's motion for summary judgment on its declaratory judgment action. It had correctly found that by simply changing the obligor from the passenger to the vessel owner is really inconsequential, and that preemption under Section 5P is appropriate. Thank you. Any questions? I have none. You actually answered my question, Mr. Kroskoff, with respect to the complementary tax. Mr. Collins had mentioned it, or has characterized this Section 32 as complementary, and you, in fact, addressed that. So I have nothing further. Thank you. I may proceed then. Thank you, Your Honor. And just a couple of points. Mr. Kroskoff acknowledged that Wendella does owe sales tax on the sales of goods sold aboard its vessels. The sales tax is like Section 32 in that both taxes are upon things separate from the vessels themselves. And although Wendella has taken the position in this case that it would not owe any tax under Section 32 if it did not take its boat out on navigable waters and sell goods to its patrons, it would not owe the sales tax either. Both taxes are permissible under Section 5B. Moreover, Mr. Kroskoff made the point that a vessel cannot literally pay a tax, and, of course, that is true. But Wendella has taken the position that a tax on a vessel amounts to a tax or a tax on the vessel is necessarily a tax on the owner. But for purposes of this case under Section 5B, Wendella actually has to show the opposite proposition, namely that this tax, which is on a vessel owner, amounts to an impermissible tax on a vessel pursuant to Section 5B. And Wendella has not made that showing, as we've explained. Moreover, and last, Wendella has taken the position that it would be illegal for it to That's not the case because Section 5B prohibits only the taxation of patrons, excuse me, passengers. And Wendella does not have tax authority. It's the state and states and cities that are prohibited from taxing passengers. And so if Wendella decided to pass on the cost of Section 32 to its patrons, that would not constitute an unlawful tax on passengers, and Wendella would not be violating the law in that instance. And if the Court has no further questions, we ask that the judgment of the Circuit Court be reversed. Any questions, Cynthia? All right, thank you both. I find this especially interesting since I was a municipal attorney for 20 years before becoming a judge. So I'm entertained especially by this. So as soon as we come with a conclusion and we hear what David has to say, then we'll let you know. You both did a very nice job. Thank you.